UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EXTRA MILE TRANSPORTATION, LLC,

              Plaintiff,

v.                                   **DECISION AND ORDER**
                                          10-CV-424S

DONALD W. DIFFEY and
USLC TRANSPORTATION,

              Defendants.

## I. INTRODUCTION

In this diversity action, Plaintiff, Extra Mile Transportation, LLC ("Extra Mile") alleges that its former employee, Donald Diffey, and the business that he owns, USLC Transportation ("USLC"), are liable for breaches of contract and loyalty, misappropriation of trade secrets, and usurpation of corporate opportunity. Presently before this Court are Defendants' motions to compel arbitration (Docket No. 24) and to dismiss USLC from this suit for lack of personal jurisdiction (Docket No. 29). For the following reasons, both motions are denied.

## II. BACKGROUND

### A. Facts

Extra Mile, a freight brokerage business, located in Buffalo, New York, assists manufacturers and distributors (i.e. businesses that need to transport products) in locating trucking companies who can ship their goods. (Id. ¶ 10.) For this service it earns a fee. (Id.)

From 2003 to 2010, Diffey worked as a branch manager at Extra Mile's Houston office. (Id. ¶ 18.) Extra Mile alleges that throughout the year 2009, Diffey took the

necessary steps to begin his own freight brokerage company, which he named USLC, and that thereafter, he began to transfer Extra Mile customers away from Extra Mile and to USLC. (Id. ¶¶ 27-35.) Among these customers was GAF Materials Corporation ("GAF"), a major Extra Mile client. (Id. ¶¶ 23, 26.)

Extra Mile alleges that at the same time Diffey was displacing its customers, the Houston office saw a significant decrease in revenue. (Id. ¶ 34.) This prompted Diffey to downsize the office's staff. (Id.) Some of those staff members, Extra Mile alleges, began to work for USLC instead. (Id. ¶ 35.) Extra Mile believes that this conduct violated Diffey's employment contract, which prohibited him from, *inter alia*, competing with Extra Mile for one year after leaving the company and using certain proprietary and confidential information for his gain. (Id. ¶ 41-42.)

**B.  Procedural History**

Extra Mile commenced this suit on May 19, 2010 by filing a complaint in this Court. (Docket No. 1.) On the same day, Extra Mile moved for a preliminary injunction, which Diffey opposed. Defendants then moved to compel arbitration, citing the employment contract in support. (Docket No. 24.) The parties eventually stipulated to an Order imposing a mutually agreeable injunction. It was signed by District Judge Richard Arcara on June 1, 2010. (Docket No. 28.) Subsequently, on June 11, 2010, Defendants moved for USLC's dismissal for lack of subject matter jurisdiction. Six months later, Extra Mile moved to compel discovery seeking various documents and authorizations. (Docket No. 72.) Each side has filed a memorandum of law regarding the discovery dispute (Docket Nos. 81, 82), which is to be decided by Magistrate Judge Schroeder.

## III.  DISCUSSION

**A.     Arbitration**

On January 15, 2004 Diffey signed an employment contract, the "Extra Mile Transportation, LLC, Associate Agreement ("Agreement"), which was drafted by Extra Mile (Agreement; Docket No. 1.)[1] Although the type of dispute at issue here is excluded from arbitration under the Agreement, Defendants claim that the Agreement is ambiguous and that it should be construed against Extra Mile.

### 1.     Standard for Ambiguity

"It is well settled that a contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011). When determining whether a contract is ambiguous, it is important for the court to read the integrated agreement "as a whole." Id. (quoting Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir. 2010) (internal quotation marks omitted)). If the document as a whole "makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the [agreement]." Id. (quoting Kass v. Kass, 673 N.Y.S.2d 350, 696 N.E.2d 174, 673 N.Y.S.2d 350 (1998) (internal quotation marks omitted; brackets in original).

---

[1] "Paragraph 7", at issue here, is attached to this Decision as "Appendix A."

## 2. The Agreement

Under the heading "EMPLOYMENT DISPUTES", the agreement binds each party to settle certain disputes in arbitration. In relevant part, it reads: "In consideration of (and as a material condition of) my hiring or the continuation of my employment as of the date of this Agreement, Extra [Mile] and [Diffey] agree to submit to arbitration any employment disputes or issues." (Id. ¶ 7) (parenthetical in original).

However, immediately following that language, the Agreement defines and limits the term "employment disputes." It specifically excludes from the definition "any claim, which relates to Extra [Mile's] enforcement of confidentiality or non-competition agreements (including the ones contained in this Agreement) for which Extra [Mile] expressly reserves, its right to seek enforcement through Court proceedings and obtain injunctive relief as appropriate." (Id.) (parenthetical in original).

There is no dispute that Extra Mile's claims concern the confidentiality and non-competition clauses found in the Agreement. Rather, Defendants contend that the language of the Agreement is ambiguous and should therefore be construed broadly and against Extra Mile, compelling it to pursue its claims through arbitration. Producing the ambiguity, Defendants argue, is the contrast between the first section of "Paragraph 7" of the Agreement, which instructs that all "employment disputes" must be arbitrated, and the second section of "Paragraph 7", which excludes certain claims.

This Court, however, finds the language of the Agreement to be unmistakably clear. First, the Agreement indicates that employment disputes must be arbitrated. Next, it defines "employment disputes" and, in so doing, it unequivocally excludes disputes that implicate the non-compete and confidentiality clauses. Although the Agreement initially

refers to employment disputes as "all issues which relate to or arise out of [the] employment relationship," is it evident that the succeeding language limits its scope.

Further, reaching any other result would render the limiting section of the Agreement meaningless, which is contrary to standard contract interpretation. See, e.g., Commc'ns Workers of Am. v. New York Tel. Co., 327 F.2d 94 (2d Cir. 1964). Accordingly, reading the document as whole, as this Court must, it is clear that the parties did not intend this claim to be subject to arbitration; as such Defendants' motion is denied.[2,3] See Lockheed Martin, 639 F.3d at 69.

**B.    Motion to Dismiss**

Defendants argue that this Court lacks personal jurisdiction over Defendant USLC.[4]

**1.    Rule 12(b)(2) Standard**

On a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that a court has personal jurisdiction over the defendant. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). Where a court declines to conduct an evidentiary hearing on such motion, a plaintiff need make only a *prima facie* showing of personal jurisdiction through

---

[2]Defendants' alternative argument, articulated in their supplemental memorandum of law (Docket No. 31) posits that the stipulated preliminary injunction ("Injunction") supercedes the Agreement and renders all obligations and rights found therein moot. However, this contention is belied by "Paragraph J" of the Injunction, which explicitly preserves Extra Mile's claims for damages arising out of Defendants' past breaches of the Agreement. (See Docket No. 28.)

[3]Defendants note that Texas law may apply, but his result is the same under Texas law. See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co., 174 F.3d 653, 656-57 (5th Cir. 1999) ("When interpreting a contract, our primary concern is to ascertain and to give effect to the intentions of the parties as expressed in the instrument . . . [t]he contract must be considered as a whole . . . [and] each part of the contract should be given effect.") (internal quotation marks and citations omitted).

[4]Defendants do not make a parallel argument with respect to Diffey.

5

affidavits and supporting materials. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez, 171 F.3d 779, 784 (2d Cir. 1999) (citing Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). Ultimately, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). Where the issue of personal jurisdiction is resolved on affidavits, the allegations are construed in the light most favorable to plaintiff, and all doubts are resolved in plaintiff's favor. A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

### 2.   Personal Jurisdiction, USLC

Defendants contend that Extra Mile has failed to satisfy its burden. Referencing only its Complaint, Defendants point out that Extra Mile did not allege in that document any facts that would confer jurisdiction on this Court under New York law.[5] However, John L. Sinatra, by declaration dated June 22, 2010, cites documents obtained through subpoena demonstrating that USLC brokered approximately 333 shipments to locations within New York State from June 1, 2009 to June 2, 2010. (Sinatra Declaration, ¶ 6-7; Docket No. 35-2). This is a *prima facie* showing that defeats Defendants' jurisdiction testing motion. See New York Civil Procedure Law and Rules § 302(a)(1) (courts may exercise jurisdiction over any non-domiciliary defendant that transacts any business within the state or contracts anywhere to supply goods or services in the state); see also Metro. Life Ins., 84 F.3d at 567. Further, because USLC "purposefully availed itself of the privilege of conducting

---

[5] It is undisputed that New York law applies to this Court's determination of Defendants' Rule 12(b)(2) motion.

activities" within New York, Extra Mile's averment of facts suffices to establish jurisdiction over Defendants under constitutional due process requirements. See World-Wide Volkswagen Corp. v Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Accordingly, Defendants' motion is denied.

### IV. CONCLUSION

For the reasons discussed above, Defendants' motions are denied.

### V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Compel Arbitration or to Stay Litigation (Docket No. 24) is DENIED.

FURTHER, that Defendants' Motion to Dismiss USLC for Lack of Subject Matter Jurisidiction (Docket No. 29) is DENIED.

Dated:  December 12, 2011
        Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                            Chief Judge
                                      United States District Court

**Appendix A**

EMPLOYMENT DISPUTES

7.      In consideration of (and as a material condition of) my hiring or the continuation of my employment as of the date of this Agreement, Extra and I agree to submit to arbitration any employment disputes or issues. Such arbitration shall be final and binding arbitration conducted pursuant to the American Arbitration Association's Rules and Procedures-Commercial Panel of Arbitrators (as may be changed from time to time, the most current copy of which is available in the Legal Department). Extra agrees to pay the fees charged for the arbitration process. If I desire to hire an attorney, or other representative, to represent me at the arbitration, this will be at my
own expense.

The term "employment dispute" as used in this Agreement means all issues which relate to or arise out of my employment relationship with Extra. This includes, without limitation, contractual, statutory and common law claims including, any and all claims for employment discrimination or sexual harassment under federal and state statutes. The term "employment disputes" does not include claims for workers' compensation, unfair labor practices under the National Labor Relations Act and claims for unemployment insurance or other claims expressly excluded by law. This also excludes any claim, which relates to Extra's enforcement of confidentiality or non-competition agreements (including the ones contained in this Agreement) for which Extra expressly reserves, its right to seek enforcement through Court proceedings and obtain injunctive relief as appropriate.

Extra and I further agree that arbitration is the exclusive means of resolution of such employment disputes and/or related company claims and that both Extra and the Associate hereby waive their respective rights, if any, to resolve any dispute and/or related claims through any other means, except as expressly provided herein, and that resolution of the dispute as provided herein, by arbitration is final and binding on the parties to the fullest extent permitted by law. The Associate must initiate arbitration (by submission of a letter to Extra's General Counselor Vice President, Human Resources requesting arbitration and referencing the specific dispute(s) being raised) within 300 Days after the alleged dispute arises or the circumstances giving rise to the dispute arise. The failure of the Associate or Extra to initiate arbitration within 300 days or to raise any issue in the
letter requesting arbitration shall be deemed a waiver and release of the dispute that is not raised within the 300 day period, unless the right to pursue a statutory remedy or claim is preserved by law.

(Agreement, ¶ 7; Docket No. 1.)